## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### URBANA DIVISION

GREGORY M.,

    *Plaintiff,*

v.

FRANK BISIGNANO, Commissioner of
Social Security,

    *Defendant.*

Case No. 2:25-cv-02150-RLH

### ORDER & OPINION

Plaintiff Gregory M. ("Gregory") filed this suit to challenge an administrative law judge's finding that he was not disabled under the Social Security Act and thus ineligible for benefits. The parties have consented to final disposition by a U.S. Magistrate Judge. (Doc. 11.) Because the ALJ's opinion was supported by substantial evidence, the Commissioner's decision will be affirmed.

### LEGAL STANDARD

**I.    The Social Security Act**

The Social Security Act—and the regulations adopted under it—explain in detail who is eligible to receive social security benefits. To qualify, a claimant must be sixty-five years of age, blind, or disabled. 20 C.F.R. § 416.202(a)(1)–(3). A claimant is disabled if she cannot "do any substantial gainful activity" because she suffers from "any medically determinable physical or mental impairment" that is either life-threatening or chronic. 42 U.S.C. § 423(d)(1)(A).

To implement that definition, the Social Security Administration has developed a five-step evaluation process. *See* 20 C.F.R. § 416.920(a)(1). The steps proceed sequentially:

**Step One.** Is the claimant currently engaged in substantial gainful activity?

**Step Two.** Does the claimant have a severe mental or physical impairment—i.e., an impairment that significantly limits their ability to do basic work activities—or a combination of them?

**Step Three.** Does the mental or physical impairment appear on an enumerated list (called "listings")? If not, is it nonetheless medically equal to one of those listings?

**RFC Assessment.** What is the claimant's residual functional capacity (RFC)—that is, the most they can still do despite their limitations?

**Step Four.** Based on the claimant's RFC, can they perform their past work?

**Step Five.** Based on the claimant's RFC, can they perform other work?

*See id.* § 416.920(a)(4)(i)–(v). The ALJ begins, of course, at step one. If it yields an affirmative answer (i.e., the claimant is working), the claimant is not disabled, and the inquiry ends. If step two yields a negative answer (i.e., the claimant does not have a severe impairment), the claimant is not disabled, and the inquiry ends. *See id.* §416.920(a)(4)(i)–(ii). Step three, however, is dispositive: If the claimant's impairment appears on a listing, the claimant is considered disabled and eligible for benefits. *See id.* § 416.920(a)(4)(iii). If the claimant's impairment does not appear on or medically equal a listing, the ALJ crafts an "RFC Assessment," which analyzes "the claimant's ability to do physical and mental work activities on a regular and continuing basis despite limitations from [their] impairment." *Moore v. Colvin*, 743 F.3d 1118, 1121

(7th Cir. 2014). If either steps four or five yield an affirmative answer (i.e., the claimant can perform their old job or adjust to a new one in light of the RFC), the claimant is not disabled. *See* 20 C.F.R. § 416.920(a)(4)(iv)–(v).

The claimant has the burdens of production and persuasion through step four. *See Wilder v. Kijakazi*, 22 F.4th 644, 651 (7th Cir. 2022). At step five, the burden shifts to the Commissioner to show that the claimant can engage in some type of substantial gainful employment. *Weatherbee v. Astrue*, 649 F.3d 565, 569 (7th Cir. 2011).

## II.    Standard of Review

A court's function on review is limited to determining whether the ALJ's findings are supported by substantial evidence and based upon proper legal criteria. *See Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Substantial evidence, in turn, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (explaining that the threshold "is not high"); *Schneck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004) ("Substantial evidence may be less than the weight of the evidence, and more than a scintilla." (citation modified)). Yet, while the ALJ's decision commands deference, courts may not simply "rubber stamp" it. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002).

3

The Seventh Circuit has emphasized that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024). Instead, ALJ's need only "provide an explanation for how the evidence leads to their conclusions that is 'sufficient to allow . . . a reviewing court, to assess the validity of the agency's ultimate findings and afford [the plaintiff] meaningful judicial review.'" *Id.* at 1054 (alteration in original) (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary"—not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). Therefore, courts reviewing for substantial evidence may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [their] judgment for the ALJ's determination so long as substantial evidence supports" the decision under review. *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021). In short, the ALJ must build "an accurate and logical bridge" between the evidence in the record and his conclusions. *Roddy v. Astrue*, 705 F.3d 631, 638 (7th Cir. 2013).

## BACKGROUND

### I.    Gregory

Gregory was born in 1967, (R. at 215[1]), and has completed high school and one year of education at the college level, earning an HVAC certification, (R. at 48). He previously worked as a maintenance worker repairing building infrastructure. (R. at 48.) He was terminated from that job due to layoffs resulting from the Covid-19 pandemic and did not resume work after that time. (R. at 49.) Gregory alleged that he was disabled  and thus unable to sustain full time employment primarily because of his vertigo, which causes dizziness, hearing loss, disrupts his balance, and makes it difficult to function. (R. at 52–54.)

### II.    Procedural History

Gregory applied to the Social Security Administration for disability benefits in March 2022, alleging that he has been disabled since June 20, 2021. (R. at 17.) His application was initially denied in January 2023 and denied upon reconsideration in October. (R. at 17.) He then requested a hearing before an ALJ, (R. at 17), which took place in April 2024, (R. at 17; 42). Present at the hearing were Gregory, his attorney, and a vocational expert. (R. at 42.)

After the hearing, the ALJ issued a written opinion concluding that Gregory was not disabled and therefore not entitled benefits. (R. at 37.) In response, Gregory sought review of the ALJ's decision with the Appeals Council, who denied his request.

---

[1] "R." refers to the Certified Administrative Record filed on July 21, 2025. (Doc. 7.) The page numbers cited in this R&R refer to the black page numbers at the bottom right of each page of the transcript rather than the green page numbers generated automatically by CM/ECF at the top right.

(R. at 1.) Gregory then filed a complaint in this Court to challenge the ALJ's decision. (Doc. 1.) Gregory filed his opening brief in October 2025, (Doc. 9), the Commissioner responded, (Doc. 15), and Gregory replied, (Doc. 16).

### III.    The ALJ's Decision

In his opinion, the ALJ used the five-step evaluation process outlined above to determine whether Gregory was disabled. At step one, she determined that Gregory has not engaged "in substantial gainful activity" since June 20, 2021—the date Gregory alleged he became disabled. (R. at 19.) At step two, the ALJ found that Gregory had one severe impairment: vertigo. (R. at 19.) At step three, the ALJ concluded that Gregory's vertigo did not meet or medically equal any of the listed impairments. (R. at 27.) Before proceeding to steps four and five, the ALJ crafted the following RFC assessment:

> [Gregory] has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) except no climbing ladders, ropes, or scaffolds; and no work around unprotected heights or unprotected dangerous moving machinery.

(R. at 27.) At step four, the ALJ found that Gregory was unable to perform his past relevant work. (R. at 34.) Finally, at step five, the ALJ concluded that Gregory—based on his age, education, work experience, and RFC—could perform jobs that exist in significant numbers in the national economy. (R. at 34.) Examples of those jobs included cleaner, hospital cleaner, and hand packager. (R. at 35.) Based on the ALJ's conclusion at step five, she determined that Gregory is not disabled. (R. at 36–37.)

## DISCUSSION

Gregory offers three reasons to reverse the ALJ's opinion. First, he argues that the ALJ failed to properly evaluate the opinion of his treating physician, Dr. Thomas Halloran. But the ALJ evaluated that opinion at length and provided specific reasons for rejecting it. Second, he argues that the ALJ improperly evaluated his subjective complaints. But the ALJ's RFC assessment detailed his allegations, recounted the medical record, analyzed the opinions, and explained her reasoning—as the regulations required her to. And third, Gregory argues that the ALJ failed to incorporate the intermittent nature of his vertigo symptoms into his RFC. But because the ALJ found those symptoms unsupported, she had no obligation to do so.

## I.    Dr Halloran's Opinion

The ALJ explicitly addressed Dr. Halloran's opinion, concluding  that it was unsupported by objective evidence and  therefore "unpersuasive." (R. at 33.) Gregory characterizes the ALJ's analysis as conclusory and "bereft of substantive analysis." (Pl. Br. 7.[2]) The Commissioner responds that the "ALJ was reasonably unpersuaded" by the opinion and "provided specific reasons (including citations) for why she" discounted it. (Comm'r Br. 10 – 12.[3])

The following standards govern an ALJ's review of medical opinions. ALJs must "evaluate every medical opinion" they receive. 20 C.F.R. § 404.1257(c). Of course, they need not accept those opinions without question. *See id.* § 404.1527(d). But when they reject an opinion, they "must provide enough analysis to allow a

---

[2] "Pl. Br." is Gregory's opening brief, filed October 20, 2025. (Doc. 9.)

[3] "Comm'r Br." is the Commissioner's response brief, filed January 16, 2026. (Doc. 15.)

reviewing court some idea of why" they did so. *Spicher v. Berryhill*, 898 F.3d 754, 758 (7th Cir. 2018). Although "ALJs need not comment on every line of a physician's treatment notes," *Kolar v. Berryhill*, 695 F. App'x 161, 161–62 (7th Cir. 2017), they must, at a minimum, "respond to the physician's principal conclusions." *Kolar*, 695 F. App'x at 162. By the same token, ALJs are often faced with conflicting medical opinions—as the ALJ here was. In that case, the ALJ must "evaluate[] the evidence" and justify why they are according more weight to one opinion over another. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004); *see also Colson v. Colvin*, 120 F. Supp. 3d 778, 793 (N.D. Ill. 2015). For claims filed after March 2017 (like Gregory's), ALJs must assess medical opinions in light of several factors—regardless of whether the opinion is from the claimant's treating physician or someone else. *See* 20 C.F.R. § 404.1520c. Those factors include: (1) supportability, meaning the objective medical evidence on which the opinion is grounded; (2) consistency with other evidence; (3) the physician's relationship to the claimant; and (4) the physician's bona fides. *See id.* § 404.1520c(c)(1)–(5). Unsurprisingly, the supportability and consistency of an opinion are the most important. *See id.* § 404.1520c(a).

The opinion in question is a Treating Source Statement completed by Dr. Halloran in March 2024. (*See* R. at 1114–20.) Among other things, Dr. Halloran posited that Gregory would be able to concentrate for two hours at a time and would require two days off of work per month. (R. at 1118.) He also included moderate limitations on Gregory's ability to lift and carry objects; sit, stand, and walk; and use foot controls. (R. at 1118–19.) Finally, Dr. Halloran opined that Gregory has

8

significant limitations on his ability to reach overhead with both arms, and moderate limitations on his ability to handle, finger, feel, push, and pull. (R. at 1119.) The ALJ recognized these limitations but found them unpersuasive. (R. at 33.) In doing so, the ALJ first observed that these limitations were grounded primarily on Gregory's "symptoms"—that is, self reports—rather than "objective/clinical findings." (R. at 33.) The ALJ also explained that these limitations on Gregory's use of his upper extremities were not substantiated by the medical evidence. (R. at 33.) The ALJ, to be sure, recognized that one functional assessment conducted around the same time "showed some strength deficits" arguably consistent with Dr. Halloran's opinion. (R. at 33 (citing. R. at 1112).) But otherwise, the ALJ found Dr. Halloran's limitations to be absent from "any other examination, especially the neurological examination that showed only some decreased vibration sensation in" Gregory's toes. (R. at 33 (citing R. at 558, 586, 633).) Finally, the ALJ observed that "no documentation" would indicate that Dr. Halloran has examined Gregory "since the alleged onset date." (R. at 33.) All told, the ALJ rejected Dr. Halloran's opinion as "not consistent with or supported by the objective evidence, course of treatment, or by [Gregory's] own activities such as driving, grocery shopping, mowing lawn [sic], going to stores such as Menards, and doing household chores." (R. at 33.) The Court therefore has "some idea"—indeed, a concrete idea—why the ALJ rejected Dr. Halloran's opinion: because it was based largely on self reports, unsubstantiated by objective evidence, and inconsistent with other opinions. *Spicher*, 898 F.3d at 758.

9

Gregory may disagree with that assessment, but his arguments fail to demonstrate reversible error. He suggests, for instance, that the ALJ's opinion was "bereft of substantive analysis." (Pl. Br. 7.) But that critique undersells the ALJ's opinion. Indeed, the ALJ's only obligation was to provide specific reasons why she rejected Dr. Halloran's opinion, such that the Court can "track[] the rationale" that underlay the rejection. *Wolford v. Kijakazi*, 658 F. Supp. 3d 664, 670 (N.D. Ind. 2023). For reasons discussed, the ALJ easily met that standard. Gregory also argues that "it is unclear how the ALJ evaluated" consistency and supportability with regard to the opinion. (Pl. Br. 8–9.) But the ALJ's opinion demonstrates precisely the opposite: Dr. Halloran's opinion lacked supportability because it was based on self reports and devoid of objective medical evidence, and it was inconsistent with all but one other medical opinion. *See id.* § 404.1520c(c)(1)–(5). It is therefore evident how the ALJ assessed both factors in weighing Dr. Halloran's opinion. Gregory has failed to demonstrate error in the ALJ's assessment of this opinion.

## II.   Gregory's Subjective Complaints

Gregory next observes that, by finding him capable of a range of medium work, the ALJ "clearly discredited" his allegations that he suffers from "random dizziness spells which cause him to fall" and require him "to lie down to recover." (Pl. Br. 10.) He argues that the ALJ erred in doing so, principally because his reports were in fact substantiated by the medical record. (*See* Pl. Br. 11–12.) The Commissioner responds that the ALJ properly relied on objective evidence, a benign treatment history, state-agency experts, and daily activities in rejecting Gregory's allegations. (Comm'r Br. 9.)

It is settled that "[s]ubjective statements by claimants as to pain or other symptoms are not alone conclusive evidence of disability and must be supported by other objective evidence." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022). Instead, ALJ's must "consider a number of factors" in addressing a claimant's account of their symptoms, including relevant medical evidence, prior work, and daily activities.[4] *Id.* To be sure, an "ALJ need not discuss every detail in the record as it relates to every factor." *Id.* Rather, the ALJ must provide "specific reasons supported by the record" for discounting a claimant's subjective account of their symptoms. *Id.* at 1279. So long as the ALJ gives those reasons, courts "will not overturn" an ALJ's rejection of a claimant's subjective account "unless it is patently wrong." *Id.*

The ALJ here recounted Gregory's allegations at length. She recognized, for instance, his allegations the he has "severe vertigo" and that, at times, he is unable to walk or lay down. (R. at 28.) She acknowledged that he feels unpredictable bouts of dizziness and that bending down causes him to become dizzy. (R. at 28.) Despite these allegations, however, the ALJ concluded that his symptoms and complaints "are not supported by objective findings consistent with a finding of total disability." Although the evidence "establishes some limitations," the ALJ reasoned, Gregory is "still . . . capable of performing medium work on a sustained basis" with certain limitations. (R. at 28.)

---

[4] The full list of factors include: (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of the claimant's pain or other symptoms; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate their pain or other symptoms; (v) treatment, other than medication, the claimant receives or has received for relief of their pain or other symptoms; (vi) any measures the claimant uses or has used to relieve their pain or other symptoms; and (vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 416.929(c)(3).

11

Gregory correctly observes that this is boilerplate language that cannot, in and of itself, satisfy the substantial evidence standard. (Pl. Br. 12.) Had the ALJ concluded her analysis there, remand would be appropriate. But she did not. Indeed, the ALJ documented the medical evidence that Gregory submitted to establish that he was disabled, (*see* R. at 29–31), and analyzed the relevant opinion evidence, (*see* R. at 31–33). In doing so, the ALJ accepted some opinion evidence (e.g., those of the state agency doctors) as persuasive, and rejected others (e.g., Laura Lyon and Teena Dixon's). (R. at 31–32.) The ALJ then summarized her findings, explaining that her RFC assessment was "consistent with, or more generous than, the" state-agency opinions; that Gregory reported no side effects from his medications; that his allegations were inconsistent with his reported activities of daily living, such as driving, cooking, caring for himself, mowing the lawn, doing laundry, fishing, shopping, and watching his grandchildren; that multiple examinations have indicated "normal gait without assistive devices"; that Gregory's relatively conservative course of treatment was inconsistent with his allegations of "debilitating mental symptoms." (R. at 33.) The ALJ thus concluded that, although Gregory has "a severe impairment and a number of non-severe impairments, he is not precluded from completing basic work-related activities on a sustained basis." (R. at 34.)

The ALJ's analysis tracked the regulatory factors. Indeed, she compared Gregory's allegations to his daily activities, finding the two incompatible. *See* 20 C.F.R. 416.929(c)(3). She discussed the frequency and severity of his symptoms, emphasizing his testimony that he "has episodes of vertigo only two to three times a

year," but has "issues with balance all the time." *See id.* And she discussed his medication, along with the relatively few measures that Gregory took to relieve his symptoms. *See id.* Accordingly, the ALJ discharged her obligation to analyze Gregory's symptoms in light of the regulatory factors, and her rejection of them was supported by substantial evidence.

Gregory's arguments to the contrary are in essence an appeal to "reweigh the evidence"—an inquiry the Social Security Act expressly forbids. *Gedatus*, 994 F.3d at 900. Indeed, Gregory notes that some evidence supported his allegations of dizziness and impaired balance. (Pl. Br. 12.) But the *fact* that some evidence points the other way does not undermine the ALJ's conclusion. *See Herr*, 912 F.2d at 181 ("Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary."). And the ALJ expressly acknowledged that some evidence does support Gregory's allegations— that's why she ascribed some limitations to begin with. (R. at 34.) Gregory also observes that the "absence of objective evidence," standing alone, is "an improper basis for rejecting" his testimony. (Pl. Br. 12.) But the lack of objective evidence was merely one ground on which the ALJ evaluated Gregory's allegations; she also discussed his daily activities, treatment history, and side effects of his medication— as the regulations required her to. Because the Court is able to "trace the path" of the ALJ's reasoning, the Court's review is at an end. *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).

### III.   Gregory's Dizziness Symptoms

Finally, Gregory argues that his dizziness episodes are "intermittent" in nature, meaning that they arise "without warning." (Pl. Br. 13.) To accommodate this, Gregory argues, the ALJ should have afforded "flexibility in scheduling or additional days off work," or "allow[ed] [Gregory] to rest in a prone position as described by his physician." (Pl. Br. 13.) The Court disagrees.

The RFC assessment asks what a claimant can do on "a regular and continuing basis despite limitations from [their] impairment." *Moore*, 743 F.3d at 1121. In answering that question, ALJs must review the record and "evaluate the 'intensity, persistence, and functionally limiting effects'" of the claimant's symptoms. *Schneck*, 357 F.3d at 701 (quoting SSR 96-7p).[5] The ALJ's written decision, of course, need not cite every piece of evidence. *Warnell*, 97 F.4th at 1053. But an ALJ may not ignore an "entire line of evidence" that undermines his ruling. *Jones v. Astrue*, 623 F.3d 1155, 1162 (7th Cir. 2010) (emphasis added). The ALJ's opinion must therefore demonstrate that she considered the relevant evidence and arrived at a reasonable conclusion based on that evidence.

As the Commissioner observes, Gregory's final argument wrongly assumes that the ALJ was required to credit his allegations about his intermittent dizziness. But an RFC need only include "all of a claimant's limitations supported by the medical record." (Comm'r Br. 9 (quoting *Reynolds v. Kijakazi*, 25 F.4th 470, 473 (7th Cir. 2022)).) So if the ALJ *did* find Gregory's symptoms of acute dizziness episodes to

---

[5] Although Social Security Ruling 96-7p has been superseded on other grounds by SSR 16-3p, the quoted portion remains good law. *See* SSR 16-3p, 81 Fed. Reg. 14166 (Mar. 28, 2016).

be supported, she of course would have been required to accommodate those symptoms in Gregory's RFC. *See Reynolds*, 25 F.4th at 473. But as discussed above, *see supra* Part II, the ALJ reasonably concluded otherwise. It follows that the ALJ had no obligation to account for the "intermittent nature" of Gregory's sudden dizziness—the ALJ did not find those symptoms supported to begin with.

## CONCLUSION

IT IS THEREFORE ORDERED that the Commissioner's decision be affirmed. The Clerk is DIRECTED to enter judgment and close this case.

*So ordered.*

Entered this 18th day of May 2026.

s/ Ronald L. Hanna

Ronald L. Hanna
United States Magistrate Judge

15